El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal.
Por medio de este recurso se nos solicita la revocación de una sentencia emitida por el Tribunal de Apelaciones. De acuerdo con dicho dictamen, el foro apelativo interme-dio confirmó una sentencia del Tribunal de Primera Ins-tancia mediante la cual se declaró ha lugar una demanda de discrimen por razón de sexo en el trabajo.
I
La Sra. Sara Ramírez Ferrer (demandante) comenzó a trabajar para Conagra Foods, Inc. (demandada) el 30 de julio de 2001. La demandada contrató los servicios de la demandante para promover y mercadear los productos co-merciales de clientes de la demandada. El 13 de septiem-bre de 2002 el supervisor inmediato de la demandante eva-luó su desempeño y fue catalogado como muy bueno.(1) Posteriormente, fundamentado en su desempeño, la de-mandante recibió dos reconocimientos y dos incentivos *805 monetarios.(2) A principios del 2003, el Sr. Carlos Delpin fue nombrado gerente general de la empresa demandada, por lo que pasó a ser el supervisor directo de la deman-dante, la cual pasó a ocupar para entonces el puesto de Gerente de Negocios o Business Manager. Junto a la de-mandante, el Sr. José Matos y el Sr. Rubén Marcucci eran los tres empleados de la demandada con funciones de Ge-rente de Negocios. La demandante manejaba el mercado de grocery, que representaba alrededor de $30,000,000 al año, cantidad que representaba el cincuenta porciento del comercio mercadeado por la demandada. Por otro lado, el Sr. José Matos tenía a su cargo el negocio de “refrigerados”, que representaba alrededor de $18,000,000 al año, y el Sr. Rubén Marcucci el negocio de los snacks que mercadeaba alrededor de $12,000,000 al año. Los otros dos varones en el puesto de Gerente de Negocios manejaban el mercadeo del otro cincuenta por ciento del comercio de clientes de la demandada.
Para el 2003, la demandante realizó una autoevaluación para medir su desempeño. La evaluación fue discutida con el Sr. Carlos Delpín. El foro primario determinó que la de-mandante cumplía con las expectativas de la empresa. Posterior a la evaluación, se le otorgó a la demandante un aumento salarial de un diez por ciento. La demandanté devengaba un salario inferior al del Sr. José Matos y uno similar al del Sr. Rubén Marcucci, aunque ambos maneja-ban una responsabilidad menor en comparación con la demandante.(3) La demandante era la empleada que más producía en términos de ventas. No constaba en el expe-diente de personal de la demandante carta alguna de amo- *806 nestación, reprimenda, advertencia o medida disciplinaria en su contra.
Bajo la gerencia general del Sr. Carlos Delpín, en la em-presa se llevaron a cabo múltiples reuniones de tipo social —las cuales terminaban tarde en la noche— y en donde se ingerían bebidas alcohólicas. El foro sentenciador encontró que la comunicación del Sr. Carlos Delpín con los otros Gerentes de Negocios era frecuente, pues almorzaba con ambos caballeros. La comunicación del Sr. Carlos Delpín con la demandante era inefectiva, pues no atendía sus pe-didos para reunirse. (4) La demandante en muchas ocasio-nes tenía que retirarse de las actividades sociales antes que los demás empleados para atender sus responsabilida-des como madre y esposa. La demandante sentía que es-taba “fuera de grupo” debido al trato que recibía del Sr. Carlos Delpín y de los otros dos Gerentes de Negocios, quienes le apodaban la “titi” por su negativa a compartir socialmente en las actividades ajenas al trabajo y por sus posiciones serias y prudentes. Durante una visita de los Gerentes de Negocios a las oficinas centrales de la deman-dada en Cánada, el Sr. Carlos Delpín indicó que saldría con los Gerentes de Negocios e indicó que “esto es para llegar tarde”, en referencia al retiro temprano de la demandante de las actividades sociales.
A diferencia de las oficinas de los otros Gerentes de Ne-gocios, la oficina de la demandante tenía una pared de cris-tal que le restaba privacidad. La demandante solicitó que se le permitiera instalar una cortina en la pared de cristal y el Sr. Carlos Delpín denegó dicho pedido. Todas estas situaciones hicieron sentir a la demandante en desventaja frente a sus compañeros varones.
El 30 de junio de 2004, el Sr. Carlos Delpín le entregó a la demandante una carta de despido en la que señaló que debido al nuevo modelo del negocio no contaban con una posición para ofrecerle. Determinó el foro primario que no *807 hubo tal cambio al modelo de negocio de la demandada. (5) Para abril de 2004, y antes del despido formal de la deman-dante, se había comenzado el proceso de reclutamiento del Sr. Juan Román para ocupar la posición de la demandante. El Sr. Juan Román y la demandada firmaron el contrato de empleo a fines de julio de 2004. El salario inicial estable-cido para el señor Román fue de $90,000 anuales, más co-misiones y otros beneficios.(6)
Dos meses después de su despido, la demandante co-menzó a trabajar con un salario de aproximadamente $4,000 mensuales, el cual duró dos meses. Posteriormente, consiguió otro trabajo en el cual devengó un salario de $75,000 por siete meses, fecha en la cual comenzó a traba-jar en su actual empleo con un salario de $78,000.
El 20 de septiembre de 2004, la demandante presentó una demanda en la que alegó que su despido fue discrimi-natorio por razón de género; solicitó la reinstalación a su empleo, haberes dejados de percibir y la compensación de los daños causados. Además, alegó discrimen por género en su modalidad de discrimen salarial, por lo que solicitó un ajuste retroactivo de salarios. Por otro lado, la demandante expuso que su despido fue discriminatorio por razón de edad. En dicho recurso la demandante demandó en su ca-pacidad personal al Sr. Carlos Delpín para que respondiera por los daños y perjuicios causados.
El foro primario determinó en su sentencia que el des-pido de la demandante fue discriminatorio por razón de sexo, no así por edad. Además, el foro sentenciador con-cluyó que aunque usualmente los haberes dejados de per-cibir o paga atrasada se computan a base del salario del demandante al momento del despido hasta el día de la sen-tencia, no procedía en el caso de autos. Esto debido a que *808 además del discrimen por sexo en su modalidad de reten-ción de empleo, la demandante fue objeto a tal discrimen en su modalidad de diferencia salarial. Dictaminó el foro a quo que la parte demandada no presentó prueba creíble para justificar la diferencia salarial entre la demandante y sus compañeros varones, cuando ésta realizaba un desem-peño mayor y tenía a su cargo mayores responsabilidades. Para computar la paga atrasada que se le debía compensar a la demandante, el Tribunal de Primera Instancia utilizó el salario otorgado al empleado reclutado para ocupar su puesto ante su despido, ya que representaba el sueldo que debía tener la demandante.
En su sentencia, el tribunal encontró que no procedía la reposición de empleo y ordenó el pago de un año de salarios como pago futuro o front pay. Además, estimó los daños causados en $30,000. Tanto para el pago futuro como para la paga atrasada se ordenó pagar la diferencia entre el salario base de $90,000 y los ingresos devengados por la demandante en los trabajos posteriores al despido. Por otra parte, el foro primario desestimó la demanda contra el Sr. Carlos Delpín en su carácter personal.
Inconforme con esta determinación, la parte deman-dada recurrió oportunamente al Tribunal de Apelaciones. En su escrito de apelación señaló los errores siguientes:

I. Erró el Tribunal de Instancia al no considerar en su Senten-cia la Prueba Documental estipulada por las partes y marcada como Exhibit, la cual era pertinente y material a los hechos del caso.

II. Erró el Tribunal de Instancia al determinar que la parte demandante apelada activó la presunción de discrimen dentro de la modalidad bajo la cual reclama ....

III. Erró el Tribunal de Instancia al determinar como cuestión de derecho que la demandada no presentó prueba para rebatir la presunción de discrimen.

IV. Erró el Tribunal de Instancia al determinar que el despido de la demandante fue uno injustificado y que el mismo fue motivado por discrimen por género.

V. Erró el Tribunal de Instancia al computar la cuantía de paga atrasada tomando como base el salario de Juan M. Ro-
*809
mán, un empleado contratado posterior al despido de la de-mandante y sin tomar en cuenta las cualificaciones de éste. VI. Erró el Tribunal de Instancia al determinar un pago fu-turo de un año (“front pay”) a razón de la diferencia en salario de Juan M. Román ($90,000.00) y el salario de la demandante a la fecha del despido ($78,000.00).

VII. Erró el Tribunal de Instancia al estimar la cantidad de $30,000.00 por concepto de daños y angustias mentales sin prueba alguna al efecto y a base de una presunción del Tribunal. Apéndice de la petición de certiorari, pág. 13.
El foro apelativo intermedio confirmó —mediante sen-tencia— el dictamen emitido por el foro primario. Concluyó dicho tribunal que la parte demandante estableció los ele-mentos necesarios para activar la presunción de discrimen por razón de sexo y que la demandada no presentó prueba suficiente para rebatirla. En cuanto al mecanismo para computar la paga atrasada, el Tribunal de Apelaciones ma-nifestó que aunque como regla general se utiliza para su cómputo el salario del demandante al momento del des-pido, en el caso de autos se probó discrimen por razón de sexo en su modalidad de diferencia salarial. Esta determi-nación, ajuicio del tribunal apelativo intermedio, favorecía utilizar el salario del nuevo ocupante del puesto, ya que reflejaba el salario que hubiera tenido la demandante al momento de su despido en ausencia de discrimen por razón de sexo.
Mediante una solicitud de certiorari la parte deman-dada acude ante nos. Arguye que el foro apelativo interme-dio cometió los errores siguientes:

I. Erró el Tribunal de Circuito de Apelaciones al hacer su re-lación de hechos del caso.

II. Erró el Tribunal de Circuito de Apelaciones al despachar el primer error señalado por la demandada-peticionaria con un “no se incurrió en el error señalado”.

II. Erró el Tribunal de Circuito de Apelaciones al igual que el Tribunal de Instancia al concluir que hubo discrimen por sexo en el despido, pero no por edad por el hecho de haber sido sustituida por un empleado varón, con un salario superior.

TV. Cometió error el Tribunal de Circuito de Apelaciones al 
*810
determinar como cuestión de derecho que la demandada-peticionaria no presentó prueba para refutar la presunción de discrimen.

V. Cometió error el Tribunal de Circuito de Apelaciones al ava-lar la forma y manera en que el Tribunal de Instancia computó la paga atrasada, a pesar que reconoció que el cómputo se rea-lizó de forma equivocada.

VI. Cometió error manifiesto el Tribunal de Circuito de Apela-ciones al no considerar y atender los errores VI y VII, sobre “front pay”y sobre daños señalados por la peticionaria deman-dante en su escrito de apelación. Petición de certiorari, pág. 8.
Debidamente sometidos todos los alegatos de las partes, procedemos a resolver sin ulterior trámite.
II
Los asuntos principales a resolver en esta ocasión giran en torno a, primero, el dictamen del foro a quo en cuanto al discrimen por razón de sexo, y segundo, el cómputo para determinar la compensación de la demandante relativa a paga atrasada o back pay, el pago futuro o front pay y para indemnizar los daños causados.
A. La Regla 43.2 de Procedimiento Civil dispone que “ [1] as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos”.(7) Cónsono con lo anterior, hemos manifestado que debe brindársele gran deferencia al juzgador de los hechos, pues es quien se encuentra en mejor posición para evaluar y adjudicar la credibilidad de un testigo.(8) Ante un conflicto de prueba, es el foro prima- *811 rio quien debe aquilatar y dirimir la controversia. (9) “Se impone un respeto a la aquilatación de credibilidad del foro primario en consideración a ‘que sólo tenemos ... récords mudos e inexpresivos.”(10)
En ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad que efectúe el Tribunal de Primera Instancia. (11)
La Regla 10(D) de Evidencia dispone que “[l]a evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho ...”.(12) En un caso de discrimen cobra vital importancia la evaluación que haga el foro sentenciador a los testimonios prestados, toda vez que hay elementos subjetivos y de intención que hacen un factor esencial la adjudicación de credibilidad. Por la centralidad de los testimonios y según el mismo razonamiento, no hemos favorecido la utilización del mecanismo de sentencia sumaria para resolver casos de discrimen.(13)
B. La sociedad moderna se ha encargado de proscribir muchas acciones individuales que van en detrimento del bienestar común y del progreso. “[E]s la sociedad quien, de ordinario, establece los parámetros aceptados para discriminar. Las normas sociales establecen cuándo y so-bre cuáles asuntos los juicios valorativos de los individuos son inaceptables, impartiéndole así atributos negativos a la discriminación.”(14)
*812 El Artículo II, Sección 1 de la Carta de Derechos de la Constitución de Puerto Rico dispone que “la dignidad del ser humano es inviolable” y que “[n]o podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas”.(15) De esta manera, nuestra Constitución ordena la construcción de un sistema jurídico que fomente la igualdad de los individuos ante la ley.
Por su parte, el Artículo II, Sección 16 de nuestra Constitución le confiere una serie de derechos a todo trabajador.(16) Entre otros, se encuentra el derecho de todo trabajador a recibir igual paga por igual trabajo.
Conforme al mandato constitucional, nuestra Asamblea Legislativa ha hecho viable y ha reiterado estos principios de justicia en nuestro ordenamiento jurídico. Relevante al caso que nos concierne, en el ámbito obreropatronal se han legislado varios estatutos para proscribir el discrimen por razón de sexo. Debido a que el trabajo es en numerosas ocasiones el sustento para acceder a artículos y servicios indispensables del diario vivir, el Estado tiene un interés apremiante en “regular las relaciones obrero-patronales, de evitar prácticas injustas del trabajo y la existencia, en nuestra jurisdicción, de una clara política pública de proteger los derechos de los trabajadores”.(17)
La Ley Núm. 100 de 30 de junio de 1959, según enmendada, prohíbe el despido o trato desigual en condiciones de trabajo contra un empleado por razón de su sexo.(18) Dicha ley establece específicamente que será ilegal y sujeto a indemnización la actuación discriminatoria por *813 razón de sexo “en relación a su sueldo, salario, jornal o compensación ...”.(19)
La Ley Núm. 69 de 6 de julio de 1985 resalta los valores y principios de igualdad y libertad en nuestra Constitu-ción:
Esta Asamblea Legislativa resuelve y declara que los valo-res de igualdad y libertad expresados en la Constitución del Estado Libre Asociado de Puerto Rico constituyen la piedra angular de la sociedad puertorriqueña. Es nuestro deber velar por el estricto cumplimiento de la garantía constitucional que tienen todas las personas para que no se les discrimine por razón de su sexo. ... La intención de este capítulo es garanti-zar la igualdad de derecho al empleo tanto del hombre como de la mujer, prohibiendo las actuaciones de los que promueven el discrimen, fijando responsabilidad e imponiendo penal-idades.(20)
La Ley Núm. 100, supra, dispone que se presumirá discriminatorio y en violación de ley un despido o una acción adversa de personal realizada sin justa causa. Esta presunción es de carácter controvertible.(21) El efecto de la presunción señalada hace necesario acudir a las Reglas de Evidencia:
En una acción civil, una presunción impone a la parte contra la cual se establece la presunción el peso de la prueba para demostrar la inexistencia del hecho presumido. Si la parte contra la cual se establece la presunción no ofrece evidencia para demostrar la no existencia del hecho presumido, el juz-gador debe aceptar la existencia de tal hecho. Si se presenta evidencia en apoyo de la determinación de la no existencia de tal hecho, la parte que interesa rebatir la presunción debe persuadir al juzgador de que es más probable la no existencia que la existencia del hecho presumido. (Enfasis suplido.)(22)
*814 Esta norma probatoria traslada el peso de la prueba de una parte en el pleito a la otra. En otras palabras, el de-mandado viene obligado a probar la no ocurrencia del he-cho mediante preponderancia de prueba, esto es, probar que es más probable la no ocurrencia del hecho presumido que su ocurrencia.(23) La presunción expuesta se activa cuando se prueba que el patrono no tenía justa causa para tomar la acción de personal adversa: en nuestro caso, la ausencia de fundamentos racionales para la fijación del sa-lario y para el posterior despido de la demandante.
Ahora bien, la Ley Núm. 100, supra, no define el término “justa causa”, por lo que hemos expresado que es necesario acudir a la definición que para dicho concepto provee La Ley de Despido Injustificado.(24) Según esta ley, se entenderá por “justa causa”:
(a) Que el obrero siga un patrón de conducta impropia o desordenada.
(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.
(c) Violación reiterada por el empleado de las reglas y regla-mentos razonables establecidas para el funcionamiento del es-tablecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.
(d) Cierre total, temporero o parcial de las operaciones del establecimiento.
(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganan-cias, anticipadas o que prevalecen al ocurrir el despido.(25)
*815 En la esfera federal, y al amparo del Título VII,(26) se ha establecido un esquema para regular los turnos probatorios en este tipo de acciones. Con alguna similitud, en nuestra jurisdicción, y al amparo de la Ley Núm. 100, supra, se establece específicamente una presunción de . discrimen. (27) El esquema procesal de la presunción establecida en el Art. 3 de la citada Ley Núm. 100 (29 L.P.R.A. sec. 148) es el siguiente:
1. El empleado deberá presentar prueba, primero, de que hubo un despido o acto perjudicial; segundo, que la acción se realizó sin justa causa, y tercero, algún hecho que lo ubique dentro de la modalidad de discrimen según la cual reclama. Una vez el empleado cumple con esta pri-mera etapa procesal, surge la presunción de discrimen del Art. 3 sin que tenga que probar el acto discriminatorio directamente. En esta etapa, el peso de la prueba cambia y recae sobre el patrono. Si el patrono no presenta prueba suficiente para rebatir la presunción, se entenderá que el empleado ha probado su caso.
En el caso de marras, para activar la presunción la de-mandante debió presentar prueba de la acción perjudicial (fijación del salario y del posterior despido de la deman-dante), la ausencia de justa causa para ello y algún hecho que la ubique dentro de la modalidad protegida por la ley, a saber, su sexo.
2. Sin embargo, para defenderse y así rebatir esta pre-sunción, el patrono tiene varias alternativas. Este puede presentar prueba que derrote el hecho básico; esto es, que el despido fue justificado; o destruir el hecho presumido (que el despido no fue discriminatorio); o presentar prueba para atacar ambos hechos.
En la controversia traída ante nos, este paso procesal significaría presentar prueba que justifique la fijación del *816 salario de la demandante en contraposición al salario superior y otorgado al varón posteriormente reclutado (la de-mandada alegó que el trasfondo académico del reclutado justifican un salario superior). Además, prueba que justifi-que el posterior despido de la demandante (la demandada alegó que fue la incapacidad de la demandante para ajus-tarse al nuevo modelo empresarial).
3. Una vez el patrono rebate la presunción de discrimen, y sólo en este caso, el trabajador debe continuar su caso sin el beneficio probatorio de la presunción; esto es, presentar evidencia concreta que pruebe que realmente hubo discrimen.(28)
Declarada “ha lugar” una demanda de discrimen al amparo de la Ley Núm. 100, supra, el trabajador tiene derecho a que se le compensen los daños consecuentes de las actuaciones ilegales de su patrono con la penalidad pro-vista en ley. Dicha ley provee para que el patrono incurso en el discrimen proscrito responda civilmente por una suma igual al doble del importe de los daños que el acto haya causado al empleado.(29) El esquema reparador de este articulado —en protección de los trabajadores— pretende proveer a las víctimas de discrimen en el empleo de los instrumentos necesarios para que se le reparen los daños causados. Esta causa de acción remediadora incluye la reparación de “todos los daños sufridos, ... tanto los daños económicos como los sufrimientos y angustias mentales ...” (Énfasis suplido.(30)
Es fundamental para la reparación de un daño la impo-sición de una compensación adecuada para restablecer nuevamente el orden jurídico.(31) La doctrina apunta a que *817 “ha de indemnizarse en general la totalidad del daño ori-ginado al perjudicado por el acaecimiento generador de responsabilidad para el causante del daño”.(32)
En ocasiones anteriores hemos resuelto la procedencia de ciertas partidas que pueden adjudicarse a favor del empleado en un pleito de discrimen. Entre estas se encuentran los daños morales o por sufrimientos y angustias mentales, además de los daños patrimoniales. Nuestra jurisprudencia no hace distinción entre daños físicos, mentales o morales para efectos del resarcimiento.(33) Conforme a este principio hemos expresado que daño es todo aquel menoscabo material o moral que sufre una persona, “ya sea en sus bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra”.(34) Consecuentemente nuestro ordenamiento jurídico fomenta un sistema completo de reparación en el área de daños. Con esto, se persigue llevar al perjudicado por una acción ilegal a su estado anterior, según sea posible.
Los daños patrimoniales en este tipo de acción incluyen la pérdida económica según los ingresos y beneficios que un demandante dejó de percibir. Hemos reconocido una partida para compensar los haberes dejados de percibir: estos son los ingresos no percibidos desde la fecha del despido hasta la fecha de la sentencia y se les conoce como paga atrasada. Además, dentro de los daños patrimoniales que se pueden conceder se encuentra la pérdida de ingresos futuros o pago futuro.(35) Aunque hemos *818 reiterado que el remedio preferente en casos de despido es la reposición en el empleo, esta opción procederá cuando a discreción del tribunal sea posible, limitando así los daños patrimoniales a la concesión de paga atrasada.(36) De no ser posible la reposición en el empleo, el tribunal deberá determinar en concepto de pago futuro los daños por la pérdida de ingresos posterior a la sentencia, esto además de la paga atrasada. La preferencia por la reposición se fundamenta en la búsqueda del remedio más completo para trabajador que ha sido afectado por las actuaciones ilegales de su patrono. Lo que persigue la Ley Núm. 100, supra, con su disposición reparadora es “restituir a la persona afectada al estado más cercano al que estaba previo a los actos ilegales padecidos en su lugar de empleo”. (Enfasis suplido.)(37)
Al igual que en nuestra jurisdicción, en la esfera federal el Título VII de la Ley de Derecho Civiles de 1964 pretende reparar los daños causados por contravenir el mandato de igualdad imperante en todo nuestro ordenamiento jurídico. Al respecto, se ha decidido que el remedio provisto en la ley federal tiene las características siguientes:
Title VII authorizes courts to put a victim of discrimination in the position that she or he would have been in but for the unlawful discrimination ....
In crafting a remedy under Title VII, a court must first, of course, indentify the precise injury caused by the discrimination and then shape a remedy that will, as much as possible, erase that injury ,...(38)
En la legislación federal, al igual que en Puerto Rico, se han reconocido los remedios de paga atrasada o back pay y de pago futuro o front pay. La paga atrasada compensa al demandante por la pérdida de ingresos desde el despido hasta la sentencia, mientras que el pago futuro *819 es una compensación por la pérdida de ingresos desde la sentencia en adelante.(39) Estos dos remedios, junto a la concesión de una compensación en concepto de daños mo-rales, tienen como fin colocar al perjudicado en una situa-ción similar a la que se encontraba justo antes de la acción ilegal. Hemos resuelto que al igual que su contraparte federal, la Ley Núm. 100, supra, otorga el derecho a compen-sación por ingresos futuros en los casos en que no se pueda decretar la reinstalación del empleado a su puesto. (40)
 Por su parte, los daños morales se consideran daños no económicos o no patrimoniales, debido a que su adjudicación no se fundamenta en una equivalencia econó-mica o exacta, pero no por eso dejan de ser compensables en dinero. (41) Hemos reconocido el cierto grado de especu-lación que conlleva la valorización de los daños; tarea que se torna delicada y agobiante para el juzgador. A tales efec-tos, nuestra jurisprudencia ha apuntado a la discreción del juzgador al utilizar el sentido de justicia y de conciencia humana en su determinación. (42) No cabe duda de que en la estimación de los daños, los tribunales de instancia se en-cuentran en mejor posición que los tribunales apelativos por su contacto directo con la prueba. (43) Reiteradamente hemos expresado que la intervención de los tribunales ape-lativos con la cantidad concedida por el foro de instancia se limita a aquellas ocasiones que éstas resulten ridicula-mente bajas o exageradamente altas.(44)
*820 III
Con el Derecho antes descrito, pasemos a revisar los hechos en la presente controversia para determinar si el foro apelativo intermedio cometió los errores señalados. Conforme a la decisión emitida por el Tribunal de Apela-ciones, el dictamen del foro primario en el cual se declaró “ha lugar” la demanda de discrimen por razón de sexo fue sostenido por la prueba y los remedios concedidos en su sentencia procedían conforme a derecho.
A. Alega la peticionaria que tanto el foro primario como el Tribunal de Apelaciones incidieron al evaluar la prueba para hacer sus determinaciones de hechos. Sus contenciones se fundamentan principalmente en la defe-rencia otorgada por el foro apelativo intermedio a la deter-minación de hechos del foro de primera instancia. Sin embargo, la parte demandada no ha demostrado que el foro a quo haya incurrido en pasión, prejuicio, error manifiesto o parcialidad al sopesar la prueba. De acuerdo con la juris-prudencia antes expuesta, le otorgamos gran deferencia al Tribunal de Primera Instancia en su apreciación de la prueba, ya que se encuentra en mejor posición para aqui-latar la credibilidad de los testigos en su sala.
Haciendo un examen de la prueba presentada, se debe concluir que las determinaciones de hechos del foro prima-rio se encuentran ampliamente sostenidas por la prueba. El foro de primera instancia, después de aquilatar todos los testimonios y la prueba presentada, adjudicó los hechos del caso. No se trae ante nos algún señalamiento con sufi-ciente peso para menoscabar la confianza en la sana dis-creción del foro a quo considerando el beneficio que éste tuvo al apreciar la prueba directamente.
B. Como segundo señalamiento de error, la peticiona-ria alega que el foro primario incidió al no considerar en su sentencia la prueba documental estipulada. Al hacer una revisión de la sentencia del foro primario, resulta evidente *821 que no se cometió el error aludido. Los documentos seña-lados por la demandada se hicieron constar expresamente en la sentencia uno a uno. La contención de la apelante es que el foro primario debió resolver conforme a estos, olvi-dando que la otra prueba presentada en juicio recibió el entero crédito del juzgador.
Arguye la parte demandada que el documento estipu-lado y que versa sobre la política escrita de Conagra Foods, Inc. contra toda clase de discrimen excluye la reclamación en el caso de marras. Aunque pertinente, la política escrita contra todo tipo de discrimen en una empresa no descarta necesariamente la práctica discriminatoria y proscrita por nuestras leyes laborales. El patrón de discrimen probado en juicio tuvo su punto culminante al momento de la de-mandante ser despedida, momento en que hace la reclama-ción que ahora nos concierne. Como la demandante no rea-lizó una determinada acción anterior al despido, no descarta que el despido en efecto haya sido discrimi-natorio.
Todos los demás documentos señalados por la deman-dada fueron objeto de prueba y el foro sentenciador tuvo la oportunidad de brindarle el peso debido junto a la demás evidencia.
C. Discutimos el tercer y cuarto error señalados en conjunto por su interdependencia. La peticionaria argu-menta que no es suficiente para sostener una reclamación de discrimen el simple hecho de haber contratado a un empleado varón luego de haber despedido a la deman-dante. Además, arguye que en el juicio presentó prueba suficiente para rebatir la presunción de discrimen. De esta manera, la demandada no atiende elementos evaluados y determinados por el foro primario que, como un todo, lo llevan a concluir que hubo discrimen por razón de sexo en el caso de marras.
Surge del expediente que la demandante cumplió con su carga probatoria inicial para activar la presunción estable- *822 cida en el Art. 3 de la Ley Núm. 100, supra. Primero, la demandante presentó prueba del despido y del acto perju-dicial al fijar la compensación de su trabajo. Segundo, la demandante presentó prueba confiable que apuntaba a un despido injustificado, al igual que a una diferencia salarial respecto a sus compañeros de trabajo varones. Tercero, la demandante se situó dentro de una de las modalidades protegidas por la ley, a saber, su sexo.
Una vez establecida la presunción de discrimen, compete a la parte demandada presentar prueba para rebatirla. Conforme a las Reglas de Evidencia, tenía que probar que era más probable la no existencia de discrimen que su ocurrencia. Es precisamente labor del foro a quo resolver los conflictos de prueba y darle el valor merecido a la evidencia presentada en el juicio. Surge de la transcrip-ción estipulada que los hechos adjudicados por el foro pri-mario están adecuadamente sostenidos por la prueba.(45)
Quedó demostrado que la demandante tenía a su cargo una responsabilidad mayor en comparación con sus otros compañeros varones; sin embargo, su salario era inferior al de uno de ellos e igual al del otro.(46) El empleado varón que sustituyó a la demandante después de su despido y con sus mismas responsabilidades comenzó devengado un sa-lario superior al de ésta por $15,000 anuales. Tanto el tes-timonio de la demandante como el de la Sra. Yolanda Mu-ñoz, quien también laboró para la demandada, reflejaron un patrón discriminatorio por razón de sexo por parte de la demandada, y así lo creyó el tribunal a quo, quien tuvo el beneficio de examinar todos los testimonios.
*823 Según la prueba presentada, entendemos que no erró el foro primario al determinar que la parte demandada no rebatió la presunción de discrimen. Por los testimonios prestados ante el Tribunal de Primera Instancia, surge que la prueba demostró una diferencia salarial no justificada.
Por otra parte, el foro primario determinó que las razo-nes expuestas por la peticionaria para justificar el despido de la demandante no fueron capaces de rebatir la presun-ción de discrimen. Por el contrario, surge del expediente que la demandante fue evaluada y premiada en varias oca-siones por su buen desempeño en la empresa antes de es-tar bajo la supervisión del Sr. Carlos Delpín. Además, por el resultado de la autoevaluación hecha posteriormente con el Sr. Carlos Delpín, se debe concluir que la deman-dante estaba cumpliendo con las expectativas empresar-iales. Además, su expediente de personal reflejó que la de-mandante nunca fue sujeto de reprimenda o amonestación. No vemos fundamento racional y suficiente que pueda jus-tificar el despido y la fijación del sueldo de la demandante.
D. El quinto y sexto error argumentados por la peticio-naria los atenderemos en forma conjunta por ser ambos materia de daños. Como antes expresamos, la persona per-judicada por una acción discriminatoria al amparo de la Ley Núm. 100, supra, tiene derecho a que se le compensen todos los daños causados y que fueron producto de dicha conducta ilegal. Este derecho a que se le indemnice incluye el resarcimiento de sus daños patrimoniales y de sus daños morales.
La paga atrasada es la compensación por los haberes dejados de percibir desde el despido hasta la fecha de la sentencia, descontando los ingresos que durante ese pe-ríodo obtuvo la parte demandante. Esta pérdida de ingre-sos es resarcible, ya que es corolario de la acción discriminatoria. El Tribunal de Primera Instancia deter-minó que la partida en concepto de paga atrasada debía *824 tener como fundamento el salario de $90,000 anuales, en vez de, el salario de la demandante al momento del despido que era de $75,000.
El foro primario reconoció que usualmente el salario base para determinar la paga atrasada es el salario de la parte demandante al momento del despido. Sin embargo, el tribunal a quo y el foro apelativo intermedio concluyeron que en este caso en específico debe computarse en relación con el salario del varón reclutado para ocupar la misma posición de la demandante después de su despido.(47) Los dos foros resaltaron el hecho de que en este caso en particular se demostró que la demandante fue discriminada por razón de sexo con relación a su salario y posterior despido. Concluyendo así, determinaron que el salario que debió te-ner la demandante, al menos al momento de su despido, debió ser de $90,000 y no de $75,000 como en efecto deven-gaba al momento del despido.
Como expresamos anteriormente, este caso plantea la situación fáctica en donde no sólo el discrimen por sexo conllevó al despido de la demandante, sino que también determinó su salario. El foro primario encontró —después de analizar directamente toda la prueba— que la deman-dante a pesar de ser la Gerente de Negocios más produc-tiva y con mayor responsabilidad en la empresa, no recibía el salario correspondiente a su desempeño por razón de su sexo. Tanto es así que el empleado varón que posterior al despido de la demandante asume sus mismas responsabi-lidades recibe un sueldo inicial considerablemente mayor. Con el beneficio de la prueba, el Tribunal de Primera Ins-tancia determinó que el salario que debió tener la deman-dante al momento del despido, de no ser por el discrimen ilegal, era de $90,000, entendemos que la prueba sostiene esta contención.
*825 La función reparadora de la Ley Núm. 100, supra, or-dena que se subsanen cabalmente todos los daños sufridos por el perjudicado a consecuencia de un discrimen de los allí proscritos. Expresa Santos Briz que para valorizar un daño hay que tomar en cuenta la noción del “interés”, en donde “el daño se determina mediante una operación de cálculo, comparando la situación real del patrimonio des-pués del evento dañoso y el estado imaginario que presen-taría si éste no hubiese ocurrido. La diferencia resultante indica la existencia del daño y su cuantía”. (Énfasis suplido. )(48)
Asumir la posición de la peticionaria nos llevaría al in-justo resultado de denegarle a la perjudicada la reparación de un daño que en efecto se produjo. En Odriozola v. S. Comestic Dist. Corp., supra, en una acción de discrimen, confirmamos la determinación de paga atrasada utilizando como salario base el de la parte demandante al momento del despido, pero sus hechos fueron diferentes a los que nos conciernen ahora. En dicho caso, a diferencia de éste, no se demostró que el salario de la parte demandante hubiera sido adversamente afectado por la acción discriminatoria. En Odriozola v. S. Comestic Dist. Corp., supra, el salario de la parte demandante anterior al despido no fue afectado adversamente por el acto discriminatorio, a diferencia de los hechos en el caso de marras. La demandada discriminó ilegalmente contra la demandante, afectando su empleo y salario, por lo que debe responder por los daños causados.
Por iguales fundamentos, el foro primario no incidió al utilizar el salario de $90,000 para computar la paga futura o front pay. Conforme determinó el foro de primera instan-cia, éste hubiera sido su sueldo y salario base para esta reclamación si no se hubiera considerado su sexo para de-terminar su remuneración.
*826 En materia de daños es reconocida la obligación de la parte demandante de emplear todos los medios razonable-mente a su alcance para reducir el monto de sus daños.(49) La demandante así lo hizo, en tan sólo dos meses consiguió trabajo y redujo así la partida de daños a la que está obli-gada a reparar la parte demandada.(50)
Con relación a la cantidad concedida en concepto de da-ños morales, como mencionamos anteriormente, los tribu-nales apelativos deben abstenerse de intervenir con las cantidades impuestas por el foro primario. La demandada no ha demostrado que la cantidad impuesta es exagerada-mente alta o producto de pasión, prejuicio, error manifiesto o parcialidad. Por el contrario, después de examinar el ex-pediente del caso, entendemos que los hechos denotan un patrón de discrimen que lesionó gravemente la salud emo-cional de la demandante.
Por los fundamentos antes expuestos, se confirma la sentencia recurrida y emitida por el Tribunal de Apelacio-nes que confirmó, a su vez, la sentencia emitida por el Tribunal de Primera Instancia.

 Apéndice de la Petición de certiorari, pág. 179. Véase Trascripción Estipu-lada, págs. 20 y 21.

 Véase Trascripción Estipulada, págs. 29, 30, 217 y 285. Los reconocimientos fueron otorgados a la demandante por tener el mejor desempeño del año y el otro por un crecimiento de doble dígito en una de las marcas que mercadeaba la demandada.

 Así lo determinó el foro primario en referencia a la cuantía monetaria que representaban los negocios a cargo de cada empleado. Apéndice de la Petición de certiorari, pág. 181.

 Íd.

 El foro primario rechazó la contención de la demandada de que la deman-dante no pudo ajustarse al cambio de un modelo de ventas directas al consumidor a uno de ventas al distribuidor. Apéndice de la Petición de certiorari, pág. 183.

 Para la fecha de su despido, la demandante devengaba un salario de $75,075, esto después del aumento recibido de un diez por ciento.

 32 L.P.R.A. Ap. III.

 Trinidad v. Chade, 153 D.P.R. 280, 291 (2001); Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984).

 Flores v. Soc. de Gananciales, 146 D.P.R. 45, 50 (1998).

 Pérez Cruz v. Hosp. La Concepción, supra, pág. 728.

 Trinidad v. Chade, supra; Pueblo v. Maisonaue Rodríguez, 129 D.P.R. 49 (1991).

 32 L.P.R.A. Ap. IV. Véase Trinidad v. Chade, supra.

 López v. Miranda, 166 D.P.R. 546 (2005); Soto v. Hotel Caribe Hilton, 137 D.P.R. 294 (1994).

 Alberty v. Bco. Gub. de Fomento, 149 D.P.R. 655, 661-662 (1999).

 Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 272.

8) Const. E.L.A., supra.

 Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364, 374 (2001).

 29 L.P.R.A. sees. 146-151.

 29 L.P.R.A. sec. 146.

 29 L.P.R.A. sec. 1321. Ley mejor conocida como la Ley de Hostigamiento Sexual en el Empleo.

 29 L.P.R.A. sec. 148.

 Regla 14 de Evidencia, 32 L.P.R.A. Ap. IV.

 Ibáñez v. Molinos de P.R., Inc., 114 D.P.R. 42 (1983).

 Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185b). Véase Alberty v. Bco. Gub. de Fomento, supra.

 29 L.P.R.A. sec. 185b.

 La Ley de Derechos Civiles de 1964, según enmendada, 42 U.S.C. secs. 1981-2000h-6.

 Díaz v. Wyndham Hotel Corp., supra.

 Díaz v. Wyndham Hotel Corp., supra; S.L.G. Hernández-Beltrán v. TOLIC, 151 D.P.R. 754 (2000); Alberty v. Bco. Gub. de Fomento, supra.

 29 L.P.R.A. sec. 146.

 S.L.G. Afanador v. Roger Electric Co., Inc., 156 D.P.R. 651, 667 (2002).

 J. Santos Briz, La responsabilidad civil: derecho sustantivo y derecho procesal, 2da ed. rev., Madrid, Ed. Montecorvo, 1977, pág. 259.

 M. Albaladejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Edersa, 1984, T. XXIV, pág. 161.

 García Pagán v. Shiley Caribbean, etc., 122 D.P.R. 193, 205 (1988); Correa v. Autoridad Fuentes Fluviales, 83 D.P.R. 144, 153 (1961); Hernández v. Fournier, 80 D.P.R. 93, 97 (1957).

 García Pagán v. Shiley Caribbean, etc., supra, págs. 205-206, citando a Santos Briz, op. cit., pág. 126; Albaladejo, op. cit., pág. 156.

 S.L.G. Afanador v. Roger Electric Co., Inc., supra; Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485 (1985); López Vicil v. ITT Intermedia, Inc., 142 D.P.R. 857 (1997).

 S.L.G. Afanador v. Roger Electric Co., Inc., supra.

 íd., pág. 669.

 Hopkins v. Price Waterhouse, 920 F.2d 967 (D.C.Cir. 1990).

 Johnson v. Spencer Press of Main Inc., 364 F.3d 368 (1er Cir. 2004).

 Odriozola v. S. Cosmetic Dist. Corp., supra, págs. 509-510.

 García Pagán v. Shiley Caribbean, etc., supra.

 S.L.G Rodríguez v. Nationwide, 156 D.P.R. 614 (2002); Urrutia v. A.A.A., 103 D.P.R. 643 (1975).

 Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985).

 S.L.G. Rodríguez v. Nationwide, supra; Pubilio Díaz v. E.L.A., 106 D.P.R. 854 (1978); Urrutia v. A.A.A., supra; Baralt v. Báez, 78 D.P.R. 123 (1955).

6) La prueba presentada, lejos de rebatir la presunción establecida reflejó el patrón discriminatorio al que estuvo sujeta la demandante. Desfiló en sala prueba del trato desigual y desfavorable para con la demandante por razón de su sexo y del apodo de “titi” que le tenían en el trabajo en referencia a su no compatibilidad con las actividades sociales de los varones.

 Tenía a su cargo el cincuenta por ciento del total del negocio de ventas de la demandada y el otro cincuenta por ciento lo atendían los otros dos varones que tenían el mismo puesto que la demandante.

 Esto, aunque quedó demostrado que el proceso para reclutar al Sr. Juan Manuel Román comenzó antes del despido de la demandante.

8) Santos Briz, op. cit., pág. 127.

 Odriozola v. S. Cosmetic Dist. Corp., supra; Fresh-O-Baking Co. v. Molinos de P.R., 103 D.P.R. 509 (1975).

 La obligación de la parte demandada en concepto de paga atrasada es la diferencia salarial entre el salario de $90,000 anuales y los percibidos desde el des-pido hasta la fecha de la sentencia. Como pago futuro deberá pagar la diferencia salarial entre $90,000 anuales y su actual salario de $78,000 anuales por doce meses. A estas sumas hay que añadirle las penalidades establecidas en ley.